UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

LABARRION HARRIS,                )
                                 )
                                 )
        Plaintiff,               )
                                 )
v.                               )          CV619-097
                                 )
BERNARD HILL, *et al.*,          )
                                 )
                                 )
        Defendants.              )

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, plaintiff LaBarrion Harris brought this Complaint alleging that prison officials interfered with the practice of his religion. Doc. 1. He later filed an amendment to the complaint alleging the use of excessive force. *See* doc. 8. Also pending before the court are two motions for injunctive relief. Docs. 9 and 10. The Court granted plaintiffs' request to pursue this case *in forma pauperis* (IFP), doc. 3, and he has provided all requested documentation, docs. 6 and 7. The Court now screens the Complaint pursuant to 28 U.S.C. §1915A.[1]

---

[1] The Prison Litigation Reform Act of 1995 (PLRA), Pub. L. No. 104-134, 110 Stat. 1321-71, sets forth procedures governing the filing of complaints in federal court by prisoners and other detainees. In cases seeking redress from a government entity or its officials, the PLRA requires a preliminary screening in order to "identify cognizable

## BACKGROUND

Plaintiff identifies as a member of the Nazarite faith and professes that a tenet of that faith requires him to abstain from cutting his hair.[2] Doc. 1 at 7. In April 2019, plaintiff wrote to Hill, the prison Chaplain, requesting a special religious accommodation to be excused from the hair length restrictions imposed by the prison. *Id*. Hill did not respond to the request. *Id*. As the special dispensation was not granted, on May 16, 2019, prison officials forcibly cut plaintiff's hair. *Id*. For protesting the forced cutting, he was placed in segregation. *Id*. In July 2019, plaintiff renewed his request for Hill to grant special permission to grow his hair. *Id*. The

---

complaints" and to dismiss, prior to service, any complaint that is "frivolous, malicious, or fails to state a claim upon which relief may be granted" or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A.

The Court applies Federal Rule of Civil Procedure 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278–79 (11th Cir. 2001). In doing so, allegations in plaintiff's Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir. 2011). Conclusory allegations alone, however, are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

[2] The Court understands the plaintiff's identification as a "Nazarite" to mean that he, as part of his personal worship, has committed to the religious vow described in Numbers 6:1–21 from the Christian Bible and Jewish Torah. Among the elements of this commitment is to abstain from cutting the hair on one's head. *See Numbers* 6:5 ("All the days of the vow of his separation there shall no razor come upon his head: until the days be fulfilled, in the which he separateth himself unto the Lord, he shall be holy, and shall let the locks of the hair of his head grow."). It is unclear from the complaint if plaintiff considers himself to be a member of any organized religious sect or denomination.

request was denied. *Id*. When asked about the denial, Hill explained that the request could not be granted because it would violate prison policy. *Id*.

In November 2019, while waiting for a meal, plaintiff was instructed by McFarland to leave the food line and get a haircut. Doc. 8 at 1. He protested, stating that he had a right to exercise his religion and that his hair did not violate the prison policy or threatened prison security. *Id*. McFarland directed plaintiff to turn around to be handcuffed. *Id*. Plaintiff continued to protest and pulled his arm away. *Id*. McFarland subdued plaintiff with his stun gun and escorted him to medical. *Id*. While walking, though plaintiff was restrained, McFarland "rammed [his] head into a brick wall." *Id*. Plaintiff's hair was then forcibly cut and he was placed in segregation. *Id*.

## DISCUSSION

### I.  United States as a Party

Plaintiff brings claims against the United States alleging that the policy of Smith State Prison denies his of equal protection under the law and is inconsistent with the policies of other prisons in different parts of the country. Doc. 1 at 7–8. He bases this claim on the misconception that the "Georgia Department of Corrections is a possession of the United

States." *Id*. at 7. As its name implies, the Georgia Department of Corrections is an agency of the State of Georgia, not the United States. As plaintiff has alleged no bad act by the federal government, his claims against the United States should be **DISMISSED**.

## II. First Amendment/RLUIPA

Plaintiff alleges that the refusal to excuse him from the policy mandating short hair infringes on his First Amendment free exercise rights. Prisoners unquestionably retain the rights afforded by the First Amendment, however, many rights are curtailed or limited as a condition of lawful incarceration. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). When a prison policy is challenged as unconstitutional, the Court must consider whether it "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). As the Court has previously noted, "[i]n a prison setting, to demonstrate a free exercise violation, a plaintiff must show that prison officials administered or implemented a policy or regulation, not reasonably related to any legitimate penological interest or security measure, which substantially burdens and significantly interferes with the practice of his religion or restricts his free exercise of a sincerely held religious belief." *Hoke v. Lyle*,

2016 WL 4197590, at * 6 (S.D. Ga. Aug. 8, 2016) (quoting *Hosey-Bey v. Williams,* 2015 WL 4988388, at * 6 (M.D. Ala. Aug. 19, 2015).

Plaintiff has alleged that the enforcement of the prison's hair length restriction would substantially burden the practice of his religion, which proscribes the cutting of a practitioner's hair. He has not, however, claimed that the challenged policy is unrelated to a legitimate interest. The Eleventh Circuit has repeatedly found that prison grooming policies serve multiple legitimate purposes, in addition to promoting security. *See, e.g., Knight v. Thompson*, 797 F.3d 934, 945 (11th Cir. 2015) (recognizing the security, discipline, hygiene, and safety interests in prison policy limiting hair length); *Martinelli v. Dugger*, 817 F.2d 1499, 1506–07 (11th Cir 1987) *superseded by statute* (prison hair length rule and shaving regulations upheld as constitutional under First Amendment and were "rationally related to substantial government interests" of maintaining security and in identifying escapees); *Harris v. Chapman*, 97 F.3d 499, 504 (11th Cir. 1996) (finding hair length restrictions constitutional and acknowledging identification of escapees and the preventing of secreted contraband as legitimate interests). The best argument that plaintiff offers is in suggesting that long hair does not pose a security threat. Doc.

1 at 8. As plaintiff is proceeding *pro se* and other claims in the Complaint survive screening, the Court will adopt a charitable reading of the pleading. *See Faulk v. City of Orlando*, 731 F.2d 787, 790 (11th Cir. 1984) (determining that for purposes of sufficiency review, the pro se petitioner's complaint encompassed the initial submission and subsequent efforts to amend complaint, consistent with the "established rule of liberal construction for pro se pleadings")  Therefore, plaintiff's free exercise claim survives frivolity review.

Though plaintiff frames his religious infringement claim solely through the lens of the First Amendment, the Court will liberally construe it to also allege a violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq.*, which provides a greater degree of protection than the First Amendment's Free Exercise Clause, as it requires the government to justify substantial burdens on religious practice by a "compelling, rather than merely a legitimate, governmental interest." *Smith v. Allen*, 502 F.3d 1255, 1266 (11th Cir. 2007), *abrogated on other grounds by Sossmon v. Texas*, 563 U.S. 277 (2011).  RLUIPA states that:

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an

institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1. "To establish a *prima facie* case under section 3 of RLUIPA, a plaintiff must demonstrate (1) that he engaged in a religious exercise; and (2) that the religious exercise was substantially burdened." *Smith v. Governor for Alabama*, 562 F. App'x 806, 813 (11th Cir. 2014) (*per curiam*) (internal quotation marks omitted). The statute is to be "construed in favor of a broad protection of religious exercise." 42 U.S.C. § 2000cc-3(g).

A "religious exercise" is defined as "any exercise of religion, whether or not compelled by, or central to, a system of religious beliefs." 42 U.S.C. § 2000cc-5(7)(A). The Court accepts that abstaining from the cutting of hair can be a religious exercise.[3] As such, the Court's focus turns to

---

[3] The Court is aware of multiple faith systems that involve traditions or beliefs regarding the shearing of hair. Similar to the Nazarite belief professed by plaintiff, Rastafarianism, Sikhism, and some Indigenous American religions proscribe the cutting a person's hair. Orthodox Judaism mandates that men refrain from shaving the payot. Conversely, the shaving or plucking of a person's hair is viewed as a symbol of asceticism and the eschewing of materialism in Hinduism, Buddhism, and among some adherents of Catholicism. Many Muslims also shave their heads at the completion of their Hajj or Umrah as a symbol of transformation.

whether the defendant's refusal to grant a dispensation and forced cutting created a substantial burden.

A "substantial burden" is a "significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Smith*, 502 F.3d at 1277 (internal quotations omitted). This includes "pressure that tends to force adherents to forego religious precepts or . . . that mandates religious conduct." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). "[T]he government's action must be 'more than . . . incidental' and 'must place more than an inconvenience on religious exercise.' That is, to constitute a substantial burden under RLUIPA, the governmental action must significantly hamper one's religious practice." *Smith*, 502 F.3d at 1277 (quoting *Midrash Sephardi, Inc.*, 366 F.3d at 1227). Hill's denial of plaintiff's dispensation request and McFarland's forcible cutting of his hair each were more than an inconvenience and directly prevented plaintiff from exercising an aspect of this faith. As such, plaintiff's RLUIPA claim survives screening.

### III. Equal Protection Claims

Plaintiff's claim that prison policies mandating the length of his hair violate the Equal Protection Clause, however, fail. "To establish an equal protection claim, a prisoner must demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis." *Sweet v. Sec'y Dept. of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006). The discrimination must be intentional or purposeful. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, our decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."). Even arbitrary administration of [prison regulations], without purposeful discrimination, does not violate the equal protection clause." *E & T Realty v. Strickland*, 830 F.2d 1107, 1114 (11th Cir. 1987) (citations omitted); *McCleskey v. Kemp*, 481 U.S. 279, 292–293 (1987) (simple disparity of treatment between individuals of different races is insufficient to establish discrimination).

Plaintiff has offered no evidence that the decision to forcibly cut his hair was motivated by religious discrimination or animus. In fact, the only argument that he makes in support of this equal protection claim is that "the Muslims have been permitted to grow a long beard but a Nazarite cannot grow long hair." Doc. 1 at 8. He has provided no evidence or argument that he is similarly situated to those allowed to grow beards, whom he suggests received more favorable treatment. Furthermore, though he alleges the policy was applied differently to Muslim inmates than Nazarite inmates, his conclusory allegations do not indicate that the disparate treatment resulted from religious animus or discrimination. Therefore, his equal protection claims should be **DISMISSED**.

## IV.   Excessive Force Claims

Plaintiff alleges that McFarland employed excessive force when restraining him and cutting his hair. *See* doc. 8. The use of force in a custodial setting violates the Eighth Amendment's prohibition against cruel and unusual punishment when it is not applied in a good-faith effort to maintain or restore discipline but, rather, is administered "maliciously and sadistically to cause harm." *Hudson v. McMillan*, 503 U.S. 1, 5–6 (1992); *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019). It is not

necessary that the use of force resulted in a serious injury, as the focus is directed to the nature of the act, not its degree. *Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010).

It is clear from the pleadings that McFarland applied force in response to plaintiff refusing to comply with the direction to leave the food line to get a haircut. Doc. 8 at 1–2. It is less clear what form of protest plaintiff mounted to the direction. The amended complaint suggests that plaintiff vocally expressed what he understood to be a constitutional right and pulled his arm away from when McFarland tried to grab him. *Id*. at 1. The disciplinary report provided in support of the amendment, however, presents a different picture, stating that plaintiff made profane threats against McFarland after refusing to comply with an order. *Id*. at 4. Regardless of the specific circumstances, the result was plaintiff being subdued with a stun gun and escorted to medical for a haircut. *Id*. at 2 & 4.

Though the use of the stun gun, it could be argued, was reasonable and necessary to maintain discipline, *see Bailey v. Hughes*, 815 F. Supp. 2d 1246, 1264 (M.D. Ala. 2011) (recognizing as a core duty of corrections officers "using reasonable force (in the form of a shock from a TASER) on

a non-compliant inmate"), plaintiff posed no threat when he was subsequently restrained by handcuffs and rammed into a brick wall. Taking plaintiff's allegations as true, there was no need for the application of additional malicious force. As such, plaintiff's excessive force claim survives screening.

## V.  Retaliation

In alleging that he was "placed in lockdown segregation for exercising [his] First Amendment Right," plaintiff waves at a claim of retaliation. Doc. 1 at 7; doc. 8 at 2. To prove a retaliation claim under the First Amendment, an inmate needs to show (1) that his speech or act was constitutionally protected, (2) that he suffered an adverse action from prison officials that would deter a person of ordinary firmness from engaging in such speech or act, and (3) that the protected speech or conduct and adverse action were causally connected. *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). Though plaintiff alleges that his placement in lockdown segregation was due to his exercise of his religious rights, he gives few details as to how he attempted to express his rights. The clearest statement of facts offered is the disciplinary report, which indicates that at least one placement in segregation resulted from a failure

to follow instructions, insubordination, and verbal threats. Doc. 8 at 4. Furthermore, as noted previously, the Eleventh Circuit has repeatedly held that prison grooming policies imposing hair length restrictions do not infringe upon a constitutional right. *See*, *supra* § 2. In the absence of a showing that the adverse action resulted from a protected act, any retaliation claim should also be **DISMISSED**.

## VI. Injunctive Relief

Plaintiff seeks a "preliminary and permanent injunction ordering the United States' Department of Corrections and Chaplin Hill" to permit the him to grow his hair in accordance with this religion. Two subsequent filings request injunctive relief only against the "United States' Department of Corrections." Doc. 8 at 3; doc. 9 at 3. A third seeks an order "telling the Prison Officials not to cut [his] hair until this Case is resolved." Doc. 10 at 1. Plaintiff further implies that he will "be in danger of being assaulted by prison guards for exercising [his] religion" if the requested relief is not granted. *Id*. As discussed above, the United States is not a proper party to this action as it has no authority over the Georgia Department of Corrections. Therefore, and noting plaintiff's suggestion that further injury may be imminent, the Court construes the requests as

a motion for a temporary restraining order against the Georgia Department of Corrections. Fed. R. Civ. P. 65(b)(1).

The Prison Litigation Reform Act (PLRA) permits injunctive relief only where (1) the relief is required by federal law; (2) "the relief is necessary to correct the violation of a Federal right;" and (3) "no other relief will correct the violation." 18 U.S.C. § 3626(a)(1)(B). The Eleventh Circuit has recognized that injunctive relief is among the remedies contemplated by RLUIPA. *See Smith*, 502 F.3d at 1271 ("the phrase "appropriate relief" in RLUIPA encompasses monetary as well as injunctive relief."). As such, it is not precluded by PLRA.

Injunctive relief is a drastic remedy and its granting rests in the discretion of the district court. *See Carillon Imp., Ltd. v. Frank Pesce Intern. Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir. 1997) (citation omitted). In order to warrant the granting of such relief, the movant must establish: "(1) a substantial likelihood of success on the merits, (2) that irreparable injury will be suffered if the relief is not granted, (3) that the threatened injury outweighs the harm the relief would inflict on the other litigant, and (4) if issued, the injunction would not be adverse to the public interest." *Long v. Sec'y, Dep't of Corrs.*, 924 F.3d 1171, 1176 (11th Cir.

2019). Even read charitably, plaintiff's pleadings and motions fail to adequately address any of these factors.

The request for injunctive relief is derivative of plaintiff's RLUIPA claim. Though he has adequately alleged a *prima facie* RLUIPA claim, he has not sufficiently argued that he will ultimately prevail on its merits. Once a *prima facie* case is made, the burden shifts to the defendants to demonstrate that the policy is the "least restrictive means of furthering a compelling governmental interest." *Knight*, 797 F.3d at 943. Plaintiff does not suggest that a less restrictive procedure is available for meeting the prison's interests. Instead, he hints at an argument that the existing policy does not further a legitimate interest, as some prisons in other states allow prisoners to grow long hair. Doc. 1 at 8. Though the practices of other institutions are relevant, RLUIPA does not require prisons to conform to the policies of "'lowest common denominator' when, in the discretion of its officials, the removal of a challenged restriction poses an appreciable risk to security." *Daker v. Wetherington*, 469 F.Supp.2d 1231, 1239 (N.D. Ga. 2007). Plaintiff also fails to address potential prison interests other than security—such as discipline and hygiene.

Plaintiff also fails to allege that irreparable injury will be suffered in the absence of an injunction. The nature of hair is that it is persistently growing and will, almost unquestionably, grow back once cut. It is conceivable that plaintiff believes the forced cutting of his hair will result in an irreparable spiritual injury, but he has not articulated such concern. Furthermore, as he has already been subjected to having his hair cut at least once, by his own admission, an injunction at this point would not redress any metaphysical injury or the breaking of a religious covenant. Doc. 1 at 8 ("The consecration and oath between God and I was broken and this injury is irreparable"). Having not alleged a potential injury, plaintiff has also not demonstrated that the costs of not granting his injunctive request outweigh the potential burden on the prison or the public interest. Therefore, plaintiff's motion for injunctive relief should be **DENIED**.

## CONCLUSION

In summary, plaintiff's religious exercise claims under the First Amendment and the Religious Land Use and Institutionalize Persons Act and claims of excessive force in violation of the Eighth Amendment survive screening. The Clerk of Court is **DIRECTED** to forward a copy of this

Order, along with plaintiff's Complaint, to the Marshal for service upon the named defendants. The Court **RECOMMENDS** that the United States be **DISMISSED** from this case as an improper party. The Court also recommends that plaintiff's equal protection, and retaliation claims be **DISMISSED** for failure to state a claim. It is further **RECOMMENDED** that plaintiff's motions for injunctive relief be **DENIED**. Doc. 9 & 10.

Moreover, it is time to pay his filing fee. Since his PLRA paperwork reflects an average monthly balance of $0 and average monthly deposits of $0, doc. 7 at 1, he owes a no fee at this time. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall remit the $28 partial filing fee and set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee has been paid in full. In the event that plaintiff is transferred to another facility, his present custodian shall forward a copy of this Order and all financial information concerning payment of the filing fee and costs in this case to his new custodian. The balance due from plaintiff

shall be collected by the custodian at all future facilities in accordance with the terms of this Order. A copy of this Order and of the Consent to Collection of Fees form Trust Account shall be served upon plaintiff and his current custodian. The payment portion of this Order is to be implemented immediately, as it is not subject to the adoption provision of Fed. R. Civ. P. 72(b).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of

rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 26th day of August, 2020.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA