UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | | |
|---|---|---|
| LABARRION HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV619-097 |
| | ) | |
| BERNARD HILL and | ) | |
| ANDREW MCFARLAND, | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, LaBarrion Harris filed this § 1983 action alleging that Defendant Bernard Hill interfered with the practice of his religion, doc. 1, and that Defendant Andrew McFarland used excessive force against him, doc. 8. Hill filed a Motion to Dismiss for Failure to State a Claim, arguing that Harris' claims against him are barred by the doctrine of *res judicata* and the "two dismissal rule" set out in Fed. R. Civ. P. 41(a)(1)(B). Doc. 26 at 1. Harris has responded, doc. 28, and Hill has replied, doc. 32. The motion is now ripe for review.

I.  **BACKGROUND**

Harris is a prisoner confined at Smith State Prison. Doc. 1 at 6. He identifies as a member of the Nazarite faith, and as part of that faith

1

professes that he must abstain from cutting his hair. *Id.* at 7; *see also id.* at 10 ("No razor shall come upon my head and I shall let my hair grow because this is the law of a Nazarite pursuant to Numbers 6:1-5 in the Bible."); *id.* at 13 ("I am a Christian Nazarite and [n]o [r]azor shall come upon my head."). On April 2, 2019, Harris was instructed that he could not grow his hair beyond the length provided by Georgia Department of Correction policy. Doc. 1 at 10. He submitted a grievance two days later complaining that he was being deprived of his right to practice his religion and requesting a "Religious Profile" permitting him to grow his hair. *Id.* His grievance was rejected as a non-grievable issue, since it was a "request[ ] for a special religious accommodation outside the accommodations allowed for by policy," and he was referred to SOP 106.11. *Id.* at 5; *see also id.* at 11. That same month he wrote letters to Bernard Hill, the Smith State Prison Chaplain, requesting a religious accommodation. *Id.* at 7. Hill did not respond. *Id.*

On April 22, 2019,[1] Harris filed his first lawsuit against Chaplain Hill in this Court. *See Harris v. Hill*, 6:19-cv-033, doc. 1 (S.D. Ga. April

---

[1] Under the prison mailbox rule, "a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n. 2 (11th Cir.2009). Courts assume, "[a]bsent evidence to the contrary, ... that a prisoner

26, 2019). In that case, he alleged that Hill was liable because as the chaplain, it is his responsibility to accommodate Harris' special religious request, and he failed to do so. *Id.* at 5. He also named the Georgia Department of Corrections for instituting a hair policy which he contended violated the Constitution. *Id.* He sought $4,000 from Hill for depriving him of his right to practice his religion, and $5,000 from the Department of Corrections for the policy that deprived him of his right to practice his religion. *Id.* at 6.

On May 16, 2019, while Harris' first lawsuit was still pending, prison officials forcibly cut his hair. Doc. 1 at 7. Shortly thereafter he was placed in segregation for his failure to follow instructions. *Id.* at 14. Three days later, on May 19, 2019, Harris filed a second lawsuit, naming Hill, Lieutenant Jackson, and the Georgia Department of Corrections as defendants. *See Harris v. Jackson*, 6:19-cv-050, doc. 1 (S.D. Ga. May 28, 2019). In that case, he alleged that Lieutenant Jackson refused to acknowledge his religion as a Nazarite and led a group of officers who forcibly cut his hair. *Id.* at 2. He again alleged that Hill deprived him of

---

delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States,* 748 F.3d 1310, 1314 (11th Cir.2014).

the right to practice his religion, and as a result he was "attacked and violated" for being a Nazarite.[2] *Id.* at 2-3. He echoed his original claims against the Georgia Department of Corrections, alleging that their policy deprived him of his right to practice his religion. *Id.* at 3.

Harris voluntarily dismissed his second lawsuit, *Harris v. Jackson*, on June 4, 2019. *See* 6:19-cv-050, doc. 4 (Motion to Voluntarily Dismiss) (S.D. Ga. June 7, 2019), doc. 5 (S.D. Ga. June 11, 2019) (dismissing case without prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)); *see also* doc. 1 at 2 (acknowledging that the lawsuit docketed at 6:19-cv-050 was voluntarily dismissed). He then voluntarily dismissed his first lawsuit, *Harris v. Hill*, on June 21, 2019, explaining that he had a duty to forgive his fellow man. *See* 6:19-cv-033, doc. 7 (S.D. Ga. July 10, 2019) (Notice and Motion to Voluntarily Dismiss), doc. 8 (S.D. Ga. Aug. 9, 2019) (granting Motion to Voluntarily Dismiss pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i)); *see also* doc. 1 at 3 (acknowledging that the lawsuit docketed at 6:19-cv-033 was voluntarily dismissed).

---

[2] He acknowledged that he already had a lawsuit pending in this Court related to the same matter. *See* 6:19-cv-050, doc. 1 at 2.

On July 1, 2019, Harris sent a Special Religious Request form pursuant to SOP 106.11 to Chaplain Hill, again requesting an exception to prison policy so that he could keep his long hair. Doc. 1 at 13. Hill denied the request on July 10. *Id.* When Harris asked him about the denial, Hill explained that the request could not be granted because it would violate prison policy. *Id.* at 7.

Harris filed this current lawsuit on October 14, 2019, again claiming that Hill's failure to accommodate his religious requests has deprived him of his right to exercise his religion.[3] Doc. 1 at 7. Harris' claims stem from Hill's failure to grant Harris a religious accommodation to grow his hair beyond the length mandated by policy. *Id.* He attaches as exhibits the initial grievance dated April 4, 2019, *see* doc. 1 at 10, the denial of that grievance that refers him to SOP 106.11, *see id.* at 11, and the Special Religious Request form sent to Chaplain Hill pursuant to SOP 106.11 on July 1, 2019 that was "disapproved" and "denied" by the Facility Chaplain on July 10, 2019, *see id.* at 13.

---

[3] Harris also named the United States of America, alleging that the policy of Smith State Prison denies him of equal protection under the law, and incorrectly arguing that the "Georgia Department of Corrections is a possession of the United States." Doc. 1 at 7. The Court dismissed the United States as an improper party. *See* doc. 15

After Harris filed this lawsuit, in November 2019, while he was waiting in line for a meal, Deputy Warden Andrew McFarland instructed him to leave the food line and get a haircut. Doc. 8 at 1. Harris protested, stating that he had a right to exercise his religion and that his hair did not violate prison policy or threaten prison security. *Id.* McFarland directed Harris to turn around to be handcuffed. *Id.* Harris refused, continuing his protests. *Id.* McFarland subdued Harris with a stun gun and escorted him to medical. *Id.* While walking, though Harris was restrained, McFarland "rammed [his] head into a brick wall." *Id.* Harris' hair was then forcibly cut, and he was placed in segregation. *Id.* After this interaction, Harris amended his Complaint to add McFarland as a defendant. *See* doc. 8 at 2.

The Court screened Harris' Complaint, as amended, pursuant to 28 U.S.C. § 1915A, and found that he had sufficiently stated claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against the defendants and a claim of excessive force in violation of the Eighth Amendment against McFarland. Doc. 11 at 16 *adopted by* doc. 15. The defendants waived service, *see* docs. 18 & 19, McFarland answered, doc. 24, and Hill filed the Motion to Dismiss

that is currently before the Court, doc. 26. The defendants also sought a stay of discovery during the pendency of Hill's Motion to Dismiss, doc. 35, which was granted, doc. 40.

## II. ANALYSIS

In his Motion to Dismiss, Hill argues that Harris' claims against him should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) because they are barred by the "two dismissal rule" contained in Fed. R. Civ. P. 41(a)(1)(B) and the doctrine of res judicata. Doc. 26-1 at 1-2.

### A. Motion to Dismiss Standard

Generally, to survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In considering a defendant's motion to dismiss, the "court must view the complaint in the light most favorable to the plaintiff and accept all the plaintiffs well-pleaded facts as true." *Am. United Life Ins. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). "However, conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Management, Ltd. V. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

An action barred by res judicata or collateral estoppel is properly dismissed for failure to state a claim pursuant to Rule 12(b)(6). *See Brown v. One Beacon Ins. Co.*, 317 F. App'x 915, 918 (11th Cir. 2009) (citation omitted) ("The district court properly dismissed the action under Rule 12(b)(6) as barred by the doctrine of res judicata[.]"); *McIntyre v. JPMorgan Chase Bank, NA*, 2015 WL 11422303, at *5 n.8, *8 (N.D. Ga. Mar. 23, 2015) (dismissing plaintiff's complaint with prejudice under Rule 12(b)(6) based on the doctrines of res judicata and collateral estoppel); *Krauser v. Evollution IP Holdings, Inc.*, 975 F. Supp. 2d 1247, 1252 (S.D. Fla. 2013) (citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1184–85 (11th Cir. 2003) (affirming district court's dismissal on grounds of res judicata under Rule 12(b)(6)). In making its determination, "[a] district court [is] permitted to take judicial notice of its own records." *Moore v. Birmingham Pub. Libr.*, 559 F. App'x 847, 848, n. 1 (11th Cir. 2014) (internal punctuation and cite omitted).

Generally, complaints by *pro se* plaintiffs are read more liberally than those drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, *pro se* parties are still required to comply with minimum pleading standards set forth in the Federal Rules of Civil

8

Procedure. *Grew v. Hopper*, 2008 WL 114915, at *2 (M.D. Fla. Jan. 9, 2008) (citations omitted); *see also Beckwith v. Bellsouth Telecomms., Inc.*, 146 F. App'x 368, 371 (11th Cir. 2005) (citation omitted) (noting that although they are construed liberally, "pro se complaints also must comply with the procedural rules that govern pleadings"); *Grigsby v. Thomas*, 506 F. Supp. 2d 26, 28 (D.D.C. 2007) ("Even though a *pro se* complaint should be construed liberally, a *pro se* complaint must still state a claim upon which the Court can grant relief.").

### B. Claim Preclusion

As outlined above, this is Harris' third lawsuit filed in this Court related to Hill's alleged failure to afford him a religious accommodation for his long hair. Harris readily admits that he voluntarily dismissed the two prior lawsuits. *See* doc. 1 at 2-3. Hill argues that Harris' second voluntary dismissal was an adjudication on the merits under Federal Rule of Civil Procedure 41(a)(1)(B), and therefore *res judicata* bars the current claims against him. *See* doc. 26-1 at 4-10.

"The doctrine of *res judicata*, or claim preclusion, bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties." *Lobo v. Celebrity Cruises,*

*Inc.*, 704 F.3d 882, 892 (11th Cir.); *see also Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). The party invoking *res judicata* must establish the following four elements: "(1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action." *Lobo*, 704 F.3d at 892; *see also Sealey v. Branch Banking and Trust Company*, 693 F. App'x 830, 833 (2017) (applying *res judicata* factors in determining a motion to dismiss based on Fed. R. Civ. P. 41(a)(1)(B)); *Dixon v. Bd. of Cty. Comm'rs Palm Beach Cty., Fla.*, 518 F. App'x 607, 610 (11th Cir. 2013) (applying factors and concluding *pro se* complaint alleging First Amendment violation barred by *res judicata*).

There does not appear to be any dispute that Hill has established the first and third elements of claim preclusion. The two prior cases were filed in this Court and raised federal questions, so the Court was one of competent jurisdiction. 6:19-cv-50, doc. 1 (asserting violation of constitutional rights under § 1983); 6:19-cv-33, doc. 1 (same); *see Booth v. Quantum Chemical Corp.*, 942 F. Supp. 580, 584 (S.D. Ga. 1996) (finding the prior judgment was entered by a court of competent jurisdiction

10

where there was no dispute as to the Court's jurisdiction over the parties or claims contained in that action). Both of Harris' prior cases named Bernard Hill, the Chaplain of Smith State Prison, as a defendant, so the cases involve the same parties. *See* 6:19-cv-50, doc. 1; 6:19-cv-33, doc. 1. The Court will therefore analyze the two remaining elements to determine whether Harris' claims against Hill should be precluded.

### 1. Final Judgment on the Merits

Hill argues that Harris' claim is precluded because his second voluntary dismissal was an adjudication on the merits under Federal Rule of Civil Procedure 41(a)(1)(B). Federal Rule of Civil Procedure 41(a)(1) allows a plaintiff to unilaterally dismiss an action without court order before the opposing party serves either an answer or a motion for summary judgment. *See* Fed. R. Civ. P. 41(a)(1)(A)(i). "Ordinarily, 'the dismissal is without prejudice[,]' [b]ut, under the so-called two-dismissal rule, 'if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.'" *Sealey*, 693 F. App'x at 834 (quoting Fed. R. Civ. P. 41(a)(1)(B)); *see also Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 394 (1990) ("If the plaintiff invokes Rule 41(a)(1) a

second time for an "action based on or including the same claim," the action must be dismissed with prejudice."). "A Rule 41(a)(1)(B) adjudication is ripe upon the filing of the third action." *Captiva RX, LLC v. Daniels*, 2014 WL 5428295 at *3 (M.D. Ga. 2014) (internal cite omitted); *see also Com. Space Mgmt. Co., Inc. v. Boeing Co., Inc.*, 193 F.3d 1074, 1076 (9th Cir. 1999) ("[W]hether the second voluntary dismissal is subject to the two dismissal rule such that it operates with prejudice as an adjudication upon the merits is an issue that becomes ripe (and can be determined) only in a third action, if and when one is filed."). As another Court in this Circuit has recognized, "[w]hen the two-dismissal rule clearly applies, it's application is not discretionary." *Beckmann v. Bank of Am., N.A.*, 2015 WL 11578509, at *4 (N.D. Ga. Jan. 27, 2015), *report and recommendation adopted* 2015 WL 11605516 (N.D. Ga. Mar. 4, 2015).

The Eleventh Circuit has held that "the primary purpose of the 'two dismissal' rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading." *Cunningham v. Whitener*, 182 F. App'x. 966, 969–970 (11th Cir. 2006); *see also American Cyanamid Co. v. McGhee*, 317

12

F.2d 295, 297 (5th Cir. 1963) ("The reason for this [two dismissal] limitation…is to prevent unreasonable abuse and harassment.");[4] *Poloron Products, Inc. v. Lybrand Ross Bros. and Montgomery*, 534 F.2d 1012, 1017 (2nd Cir. 1976) (observing that it is "universally accepted" that the primary purpose of the two-dismissal rule is to prevent an unreasonable use of the plaintiff's unilateral right to dismiss an action prior to the filing of the defendant's responsive pleading).

It is uncontested that Harris voluntarily dismissed his two prior lawsuits against Hill, and that both of those dismissals were unilateral and voluntary. *See* 6:19-cv-050, doc. 4; 6:19-cv-033, doc. 7.[5] The Court in each case construed Harris' *pro se* filings as dismissals pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). *See* 6:19-cv-050, doc. 5; 6:19-cv-033, doc. 8. If Harris' two prior lawsuits include the "same claim" against Hill, then the one dismissed second should be considered an adjudication on the merits. Fed. R. Civ. P. 41(a)(1)(B) ("[I]f the plaintiff previously dismissed any

---

[4] Decisions of the Fifth Circuit rendered before October 1, 1981, are binding upon panels of the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

[5] Although Harris styled each filing as a "Motion to Voluntarily Dismiss," *see* 6:19-cv-033, doc. 7; 6:19-cv-050, doc. 4, the fact that a notice of dismissal pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i) is styled a "motion to dismiss" rather than a "notice of dismissal" is without consequence. *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990).

13

federal…action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.").

"There is surprisingly little discussion in the case law of what is considered "the same claim" for purposes of Rule 41(a)(1)(B)." 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2368 (4th ed. April 2021). And "neither the Supreme Court nor the Eleventh Circuit has addressed the meaning of 'same claim' in Rule 41(a)(1)(B)." *Beckmann*, 2015 WL 11578509 at *5. The Court in *Beckmann* followed the lead of the Ninth and Fourth Circuits in applying the same "nucleus of operative fact" test from *res judicata* jurisprudence. *Id.* For purposes of this analysis, the Court adopts the same approach.[6] If *Harris v. Hill* and *Harris v. Jackson* "arise out of the same nucleus of operative fact, or [are] based upon the same factual predicate," then the voluntary dismissal of *Harris v. Hill*, which was after the voluntary dismissal of *Harris v. Jackson*, should be considered a final adjudication on the merits. *Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011); Fed. R. Civ. P. 41(a)(1)(B).

---

[6] For purposes of determining whether Rule 41(a)(1)(B) applies, the two lawsuits to compare are the two that Harris previously dismissed. Fed. R. Civ. P. 41(a)(1). In Section II.B.2., *infra.*, the same analysis applies to determine whether the current lawsuit raises the same cause of action against Hill as the prior lawsuits.

14

*Harris v. Hill* and *Harris v. Jackson* make the same allegations against Hill. *Compare* 6:19-cv-033, doc. 1 at 5 (alleging that Hill is liable because he has not granted Harris the requested religious accommodation) *with* 6:19-cv-050, doc. 1 at 2-3 (alleging that Hill is liable because his failure to grant Harris' religious accommodation deprived him of the right to practice his religion). Harris' claims in *Harris v. Hill* are based on multiple requests to Hill for a "Special Religious Accommodation" and Hill's failure to respond or grant the request. *See* 6:19-cv-033, doc. 1-1 at 1-2. Similarly, his claims against Hill in *Harris v. Jackson* are based on multiple requests to Hill for a religious accommodation, and Hill's failure to respond or grant the request. *See* 6:19-cv-050, docs. 1-1 & 1-2. The claims are, therefore, based upon the same factual predicate; the request for a religious accommodation and the failure to grant that request.

Because Harris' claims against Hill in *Harris v. Hill* and *Harris v. Jackson* are the same, and because Harris voluntarily dismissed *Harris v. Jackson* first, the voluntary dismissal of *Harris v. Hill*, 6:19-cv-033, doc. 7, should operate as an adjudication on the merits of Harris' claims against Hill for his alleged failure to grant Harris the requested religious

15

accommodation. *See* Fed. R. Civ. P. 41(a)(1)(B); *see also Sealey*, 693 Fed. App'x at 834 (finding the district court did not err in applying the two-dismissal rule to a *pro se* plaintiff's third complaint raising the same claims as those in two prior complaints that were voluntarily dismissed); *see also Reshaw v. Select Portfolio Servicing, Inc.*, 2019 WL 5490620 at *4 (N.D. Ga. 2019) (applying the two-dismissal rule, rendering a *pro se* plaintiff's second voluntary dismissal an adjudication on the merits of the claims asserted in that action that had been asserted in the first action he also voluntarily dismissed); *Cabot Golf CL-PP 1, LLC v. Nixon Peabody, LLP*, 575 F. App'x 216, 219 (5th Cir. 2014) (applying two-dismissal rule, even with harsh result of dismissal of third lawsuit, where plaintiff unilaterally dismissed two prior "virtually identical" lawsuits).

2. **Same Causes of Action**

For *res judicata* to bar this third lawsuit, it must involve the same cause of action as *Harris v. Hill,* 6:19-cv-033, since that is the case that should be considered an adjudication on the merits. "Two cases are generally considered to involve the same cause of action if the latter case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate,' as the former one." *Maldonado*, 664 F.3d at 1375

(quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1239 (11th Cir. 1999)). "Res judicata acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." *Id.* at 1375-76 (internal citations and punctuation omitted).  "In the Eleventh Circuit, the principal test for determining whether the causes of action are the same is whether the primary right and duty are the same in each case.  In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *Ragsdale*, 193 F.3d at 1239 (internal quotations omitted).

Harris' claims against Hill in his first two lawsuits arise from Hill's *failure to respond* to his multiple requests for a religious accommodation to grow his hair beyond the length set by prison policy.  *See* 6:19-cv-033, doc. 1 at 5, 6:19-cv-050, doc. 1 at 2-3.  By contrast, his current claims against Hill arise from Hill's ultimate *denial* of his Special Religious Request form, and his failure to "process it up the chain of command." *See* doc. 1 at 7.  *Id.*  This decision was not made until July 10, 2019, after the prior lawsuits were voluntarily dismissed. *Compare id. with* 6:19-cv-050, doc. 4 (dismissal signed June 4, 2019) *and* 6:19-cv-033, doc. 7

(dismissal signed June 21, 2019). "The preclusion of claims that 'could have been brought' in earlier litigation does not include claims that arose after the original complaint was filed in the prior action, unless the plaintiff actually asserted the claim in 'supplemental pleadings or otherwise.' " *Moore v. Pak*, 402 F. App'x 491, 493 (11th Cir. 2010) (quoting *Pleming v. Universal–Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir.1998)). Harris did not raise the actual *denial* of his request in either of his prior lawsuits, as it was not actually *denied* until after they were dismissed.

Moreover, *res judicata* only applies to claims that "could have been raised" in a prior action. S*ee In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). Harris is subject to the requirements of the Prison Litigation Reform Act ("PLRA"), which requires an inmate to exhaust available administrative remedies before filing a lawsuit. *Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir. 2008). Because Harris very well may not have exhausted his administrative remedies until Hill ultimately denied his request, any attempt to bring the instant claim in the prior lawsuits could have been procedurally barred, and therefore it is not a claim that "could have been raised." *In re Piper Aircraft Corp.*, 244 F.3d at 1296.

## III. CONCLUSION

Harris voluntarily dismissed two prior lawsuits against Hill based on the same alleged conduct, and therefore the second dismissal should be considered an adjudication on the merits pursuant to Federal Rule of Civil Procedure 41(a)(1)(B). However, Harris' claims against Hill in the instant lawsuit contain claims that are discrete from those alleged in the prior lawsuits, and therefore Defendant Hill has not met his burden to establish that *res judicata* bars the instant claims. Therefore, Hill's Motion to Dismiss should be **DENIED**. Doc. 26. Previously the Court stayed this action pending disposition of the Motion to Dismiss. *See* doc. 40. The stay, however, shall remain in effect pending the District Judge's final decision. Upon the entry of the District Judge's Order on this Report and Recommendation, the Clerk is **DIRECTED** to lift the stay. The parties' sixty-day period to conduct discovery, *see* doc. 40 at 3-4, shall commence upon the entry of the District Judge's Order on this Report and Recommendation.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party

may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 30th day of July, 2021.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA