**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**STATESBORO DIVISION**

| | | |
|---|---|---|
| LABARRION HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV619-097 |
| | ) | |
| BERNARD HILL and | ) | |
| ANDREW MCFARLAND, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, Plaintiff LaBarrion Harris filed this 42 U.S.C. § 1983 action alleging Defendant Bernard Hill interfered with the practice of his religion, doc. 1, and Defendant Andrew McFarland used excessive force against him, doc. 8. Defendants filed a motion pursuant to Federal Rules of Civil Procedure 37 and 41 after Plaintiff refused to answer questions during his noticed deposition. *See generally* doc. 50. Plaintiff responded but styled his response as a "Motion for Summary Judgment." Doc. 51. Defendants replied. Doc. 53. Plaintiff also filed a "Motion for Preliminary Injunction/Temporary Restraining Order." Doc. 57. Defendants have responded, doc. 58, and Plaintiff has replied, doc. 59. These motions are all ripe for review.

## I.   BACKGROUND

Harris is a prisoner confined at Smith State Prison.  Doc. 1 at 6.  He identifies as a member of the Nazarite faith, and as part of that faith professes that he must abstain from cutting his hair.  *Id.* at 7; *see also id.* at 10 ("No razor shall come upon my head and I shall let my hair grow because this is the law of a Nazarite pursuant to Numbers 6:1-5 in the Bible."); *id.* at 13 ("I am a Christian Nazarite and [n]o [r]azor shall come upon my head.").  Prison officials instructed Harris that he could not grow his hair beyond the length provided by Georgia Department of Correction policy, so he sent a Special Religious Request form to Defendant Bernard Hill, the Smith State Prison Chaplain, requesting an exception to prison policy so that he could keep his long hair.  *Id.* at 13.  Hill denied the request.  *Id.*

Harris filed this lawsuit claiming that Hill's failure to accommodate his religious requests has deprived him of his right to exercise his religion.[1]  Doc. 1 at 7.  He then amended his Complaint to add Andrew McFarland as a defendant, alleging McFarland handcuffed him,

---

[1] Harris also named the United States of America, alleging that the policy denies him equal protection under the law, and incorrectly arguing that the "Georgia Department of Corrections is a possession of the United States."  Doc. 1 at 7.  The Court dismissed the United States as an improper party.  *See* doc. 15.

"rammed [his] head into a brick wall" and then "made some officers hold [him] down and cut [his] hair." Doc. 8 at 1-2. He further alleges he was then "placed in lockdown segregation." *Id.* at 2.

The Court screened Harris' Complaint, as amended, pursuant to 28 U.S.C. § 1915A, and found that he had sufficiently stated claims under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA") against the defendants and a claim of excessive force in violation of the Eighth Amendment against McFarland. Doc. 11 at 16, *adopted* doc. 15. The defendants waived service, *see* docs. 18 & 19, McFarland filed his Answer, doc. 24, and Hill filed a Motion to Dismiss, doc. 26. The Court denied Hill's Motion to Dismiss, doc. 43, Hill filed an Answer, doc. 44, and the discovery period commenced, *see* docs. 41 at 19, 45.

After discovery began, Defendants noticed Harris' deposition to take place via Webex video conference. *See* doc. 50-1 at 2; *see also* doc. 50-2. Defendants did not first obtain leave of Court to do so. *See generally* docket; *see also* doc. 50-2; Fed. R. Civ. P. 30(a)(2)(B). Harris appeared for his deposition. *See generally* doc. 50-3. He initially responded to counsel's questions. *See id.* at 1-28. However, after counsel

3

began asking about the letters Harris wrote to Hill, Harris refused to answer any more questions. *See id.* at 28-40. Instead, he insisted that Defendants' counsel should answer his legal questions about his right to exercise his religion. *Id.* When counsel continued to press Harris for an answer and refused to engage in Harris' own line of questioning, Harris left the screen. *Id.*; *see also id.* at 40. The deposition was suspended. *Id.* at 40.

## II.   ANALYSIS

### A.   <u>Defendants' Rule 37 Motion</u>

Defendants move for dismissal as a sanction against Harris for his deposition conduct. Doc. 50 at 1. Alternatively, they seek an Order directing him "to appear for and participate in his deposition." *Id.* at 1. In response, Harris filed a document styled as a "Motion for Summary Judgment." Doc. 51 at 1. However, Harris expressly contends that the document "rebuts the defendants['] motion to dismiss." *Id.* Therefore, the Court construes the filing as Harris' response to the Defendants' motion.[2] In it, he argues that he did not refuse to participate in his

---

[2]   District courts may recharacterize a *pro se* litigant's motion. *Castro v. United States*, 540 U.S. 375, 381 (2003) ("Federal courts sometimes will ignore the legal label that a pro se litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category."). Here, the contents of the "Motion for

deposition. *Id.* Instead, he attempts to justify his behavior by categorizing the defendants' counsel as a "tyrant" who "would not answer [his] one question" and "treated the deposition like a dictatorship." *Id.*

"A deponent may refuse to answer questions only if 'necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion' to terminate the deposition for abuse." *Isaac v. RMB Inc.*, 604 F. App'x 818, 821 (11th Cir. 2015) (quoting Fed. R. Civ. P. 30(c)(2)). Harris does not argue that any of these exceptions apply to his refusal to answer questions. *See* doc. 51. Instead, just as the transcript reveals, he refused to answer counsel's questions because counsel would not answer his legal questions. *Id.* at 1. That is not a legally sufficient reason. *See* Fed. R. Civ. P. 30(c)(2). Therefore, Harris violated the Federal Rules of Civil Procedure when he failed to answer Defendants' questions without legally sufficient justification.

As a sanction for that failure, Defendants seek either dismissal, or, in the alternative, an order directing Harris to submit to a deposition and

---

Summary Judgment" indicate that it was filed as a direct response to the Defendants' motion. *See* doc. 51 at 1. Moreover, it does not include any of the supporting materials required by the Federal Rules of Civil Procedure or this Court's Local Rules. *See* Fed. R. Civ. P. 56; S.D. Ga. L. Civ. R. 56.1. Therefore, the Clerk is **DIRECTED** to terminate Plaintiff's Motion for Summary Judgment. Doc. 51. The Court instead considers the contents as opposition to the Defendants' requested relief.

an extension of the discovery period by 45 days so that the deposition can be noticed and taken.  Doc. 50-1 at 3-4.  Before the Court can address the appropriate remedy for Plaintiff's deposition conduct, it must first address the Defendants' procedural misstep.

Federal Rule of Civil Procedure 30(a)(2)(B) provides in relevant part: "A party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2) . . . if the deponent is confined in prison."  Fed. R. Civ. P. 30(a)(2)(B).  The docket does not reflect any such motion made by the Defendants prior to Harris' deposition, and the notice itself does not reference the Court's leave.  *See generally* docket; *see also* doc. 50-2.  When faced with a similar situation, the Northern District of Georgia noted the "scant binding authority and inconsistent out-of-circuit case law" on the issue, ordered the deposition testimony stricken from the record, and allowed the defendants' leave to re-depose the two prisoner deponents.  *Barton v. Liberty Mut. Ins. Co.*, 2013 WL 12063886, at *3 (N.D. Ga. Nov. 26, 2013).  Given the Defendants' alternative request to re-depose Harris, their misstep can be

6

corrected.  The Court hereby grants the Defendants leave to depose Harris pursuant to Federal Rule of Civil Procedure 30(a)(2)(B).[3]

For the foregoing reasons, Defendants' alternative request for relief is **GRANTED**.  Doc. 50, in part.  Harris is **DIRECTED** to appear for his deposition upon proper notice from Defendants.  *See* Fed. R. Civ. P. 37(a)(3) (a court may compel a party to appear and answer questions where he refused to do so).  The Defendants' request for an extension of the discovery period for 45 days for the limited purpose of allowing Plaintiff's deposition to be re-noticed and re-taken is also **GRANTED**.  Doc. 50, in part.

Defendants also seek the costs, including attorney's fees, incurred in filing their motion.  *See* doc. 50-1 at 3.  Rule 37 provides that, when a motion to compel is granted, the court "must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A); *see also Isaac*, 604 F. App'x at 821.  However, ordering payment is

---

[3]  Federal Rule of Civil Procedure 30(a)(2)(A)(ii) also requires leave of Court where the deponent has already been deposed in the case.  To the extent the unapproved prior deposition implicates the Rule, the Court grants leave to re-depose Harris under that subsection as well.

improper where circumstances make an award of expenses unjust.  Fed. R. Civ. P. 37(a)(5)(A)(iii).  Given Harris' *pro se* and *in forma pauperis* status and given Defendants' failure to obtain leave of Court prior to Harris' first deposition, an award of fees would be inappropriate at this point.  However, should Harris again appear and refuse to answer questions, requiring Defendants to again seek the Court's intervention, that outlook might very well change.  Harris is forewarned that any failure to respond to Defendants' counsel's questions, without substantial justification, will subject him to penalties, both monetary and otherwise. *See* Fed. R. Civ. P. 37(a)(5); *see also Moon v. Newsome*, 863 F.2d 835, 837 (1989) ("If a *pro se* litigant ignores a discovery order, he is and should be subject to sanctions like any other litigant.").

Specifically, Harris is expressly warned that failure to appear and answer Defendants' counsel's questions may result in the dismissal of this lawsuit under Rule 37 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 37(b)(2); *see also Amerson v. Comm'r, Ga. Dept. of Corr.*, 2022 WL 628418, at *3-5 (11th Cir. Mar. 4, 2022) (affirming dismissal of *pro se* plaintiff's Complaint for his refusal to participate in his deposition).  If Plaintiff does not comply, Defendants are free to again

seek sanctions for that failure, including dismissal.   Their current request for dismissal is **DISMISSED**, **as moot**, pending Plaintiff's reconvened deposition.  Doc. 50, in part.   *See, e.g.*, *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1542 (11th Cir. 1993) (district courts have broad discretion in fashioning appropriate sanctions for violation of discovery orders, but the severe sanction of dismissal "is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders.").

### B.   Plaintiff's Motion for Injunctive Relief

Harris also seeks a preliminary injunction or temporary restraining order restraining McFarland "and all GDC employees, agents, officers, and servants" from cutting his hair.[4]  Doc. 57.   Defendants oppose his request for injunctive relief, and Harris has replied to their opposition. *See* docs. 58 & 59.

"Preliminary injunctions are issued when drastic relief is necessary to preserve the status quo."  *All Care Nursing Serv., Inc. v. Bethesda*

---

[4]  The Court does not have jurisdiction to enter a restraining order or injunction against non-parties.  *See In re Infant Formula Antitrust Litig., MDL 878 v. Abbott Labs.*, 72 F.3d 842, 842-43 (11th Cir. 1995).  Therefore, any request for injunctive relief against unnamed "GDC employees, agents, officers, and servants" who are not otherwise named as defendants in this case should be **DENIED**.  Doc. 57, in part.

*Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989).  As the Court

has already explained:

> The Prison Litigation Reform Act (PLRA) permits injunctive
> relief only where (1) the relief is required by federal law; (2)
> "the relief is necessary to correct the violation of a Federal
> right;" and (3) "no other relief will correct the violation."  18
> U.S.C. § 3626(a)(1)(B).  The Eleventh Circuit has recognized
> that injunctive relief is among the remedies contemplated by
> RLUIPA.  *See Smith* [*v. Allen*, 502 F.3d 1255, 1271 (11th Cir.
> 2007) *overruled on other grounds by Hoever v. Marks*, 993 F.3d
> 1353, 1363 (11th Cir. 2021)] ("the phrase "appropriate relief"
> in RLUIPA encompasses monetary as well as injunctive
> relief.").  As such, it is not precluded by PLRA.
>
> Injunctive relief is a drastic remedy and its granting rests in
> the discretion of the district court.  *See Carillon Imp., Ltd. v.
> Frank Pesce Intern. Grp. Ltd.*, 112 F.3d 1125, 1126 (11th Cir.
> 1997) (citation omitted).  In order to warrant the granting of
> such relief, the movant must establish: "(1) a substantial
> likelihood of success on the merits, (2) that irreparable injury
> will be suffered if the relief is not granted, (3) that the
> threatened injury outweighs the harm the relief would inflict
> on the other litigant, and (4) if issued, the injunction would
> not be adverse to the public interest."  *Long v. Sec'y, Dep't of
> Corrs.*, 924 F.3d 1171, 1176 (11th Cir. 2019).

Doc. 11 at 14-15.  As with his first requests for injunctive relief, Plaintiff's

newest request fails to adequately address each of these factors.  *See id.*

at 15-16 *adopted* doc. 15 at 4-5.  He has not, therefore, carried his burden

to convince the Court that "drastic relief" is necessary.  *All Care Nursing*

*Serv., Inc.*, 887 F.2d at 1537.

Plaintiff urges the Court to grant his motion because he is "in danger of being physically beat, pepper sprayed, tazed and pencil whipped for growing [his] hair." Doc. 57 at 1. He then explains that he is "already in segregation lockdown" and "will remain in segregation" for his own safety and security. *Id.* He seems to suggest that, because he is in segregation, he should not be subject to the hair growth policy. *Id.* He expands on this suggestion in his reply, explaining "I've never been in trouble for contraband and I'm in segregation. There is no threat to security and I will allow them to search my hair if needed. . . . Clearly the threat to security is not serious. They have machetes here! I can't hide that in my hair. They will be fine without coming to segregation to pick a fight about my hair." Doc. 59 at 1-2.

Harris' protestations notwithstanding, he has not met the high burden necessary for the Court to impose preliminary injunctive relief. He has not provided any new evidence to alter the Court's initial analysis of his request for a preliminary injunction. *See* doc. 15. His conclusory, unsupported allegations are not enough. Therefore, his Motion for Preliminary Injunction and Temporary Restraining Order should be **DENIED**. Doc. 57.

## III.  CONCLUSION

Defendants' alternative request for relief in their motion for sanctions, styled as a Motion to Dismiss, is **GRANTED**.  Doc. 50, in part.  Harris is **DIRECTED** to appear for his deposition and answer Defendants' counsel's questions.  Defendants' request for an extension of the discovery period for 45 days for the limited purpose of allowing Plaintiff's deposition to be re-noticed and re-taken is also **GRANTED**.  Doc. 50, in part.  Defendant's Motion to Dismiss is **DISMISSED, as moot**, pending Harris' renewed deposition.  Doc. 50, in part.  Harris' filing, styled as a "Motion for Summary Judgment," is construed as his response to the Defendants' motion and the motion is, therefore, **TERMINATED**.  Doc. 51.

Harris' Motion for Preliminary Injunction or Temporary Restraining Order should be **DENIED**.  Doc. 57.  This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and

Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 7th day of September, 2022.

CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA